638 So.2d 1011 (1994)
Jimmy Wayne CRAFT, Appellant,
v.
STATE of Florida, Appellee.
No. 92-04349.
District Court of Appeal of Florida, Second District.
June 15, 1994.
*1012 Domingo G. Alvarez, III, Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., and John M. Klawikofsky, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Because the state failed to establish an exigent circumstance that would permit law enforcement officers to enter the defendant's home without first knocking and announcing their presence, we reverse the trial court's order denying the motion to suppress filed by the defendant, Jimmy Wayne Craft.
The state argued, and the trial court ruled, that the officer peril exception to the knock-and-announce requirement justified the entry because the officers who were going to execute a search warrant at Craft's residence had reason to believe they would be in peril based on information regarding Craft's possession of a firearm, an intercom system and a police scanner. Testimony presented at a hearing on Craft's motion to suppress established that the back door of Craft's residence was broken open with a sledge hammer within seconds of, or simultaneously with, the officers' announcement, "sheriff's department, search warrant." The trial court ruled, and we agree, that if the officers knocked and announced their authority and purpose, they did so with such haste that Craft did not have a reasonable opportunity to respond. Therefore, the officers did not follow the knock-and-announce procedures set forth in section 933.09, Florida Statutes (1993).[1]
The importance of following the knock-and-announce procedures was underscored by the supreme court in State v. Bamber, 630 So.2d 1048, 1051-1052 (Fla. 1994), when it reiterated the basis for the knock-and-announce requirement as set forth in its earlier opinion, Benefield v. State, 160 So.2d 706, 709 (Fla. 1964), wherein the court said:
Entering one's home without legal authority and neglect to give the occupants notice have been condemned by the law and the common custom of this country and England from time immemorial. It was condemned by the yearbooks of Edward IV, before the discovery of this country by Columbus. Judge Prettyman for the court of appeals in Accarino v. United States ... discussed the history and reasons for it. William Pitt categorized a man's home as his castle. Paraphrasing one of his speeches in which he apostrophized the home, it was said in about this fashion: The poorest pioneer in his log cabin may bid defiance to the forces of the crown. It may be located so far in the backwoods that the sun rises this side of it; it may be unsteady; the roof may leak; the wind may blow through it; the cold may penetrate it and his dog may sleep beneath the front steps, but it is his castle that the king may not enter and his men dare not cross the threshold without his permission.
This sentiment has moulded our concept of the home as one's castle as well as the law to protect it. The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call. There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the *1013 law protects its entrance so rigidly. The law so interpreted is nothing more than another expression of the moral emphasis placed on liberty and sanctity of the home in a free country. Liberty without virtue is much alike a spirited horse, apt to go berserk on slight provocation if not restrained by a severe bit. (citations omitted).
Against this historical backdrop, we examine the case before us. The officer peril exception was one of four exceptions to the knock-and-announce rule recognized by the supreme court in Benefield.[2] Thirty years later, in Bamber, the supreme court once again recognized that, although a strong presumption exists against the validity of a no-knock search, such searches are lawful when certain exigent circumstances exist at the scene. 630 So.2d at 1052. However, in order to determine whether the circumstances of a given case constitute a valid exception, the court found that a particularity approach was favorable to a blanket approach for assessing the reasonableness of an officer's belief regarding whether an exigent circumstance was present. The court held that an officer's belief must be based on particular circumstances existing at the time of entry and must be grounded on something more than his or her generalized knowledge. Id. at 1055. Thus, in the present case, we must determine whether the officers had good reason to believe they might be in peril at the time of the execution of the search warrant.
The only evidence presented to justify the officer peril exception was the testimony of two narcotics officers regarding their separate contacts with two separate confidential informants who, in turn, had contact with Craft. This evidence was the sole basis of the entry team being told that Craft was known to carry weapons and that the execution of the warrant was to be a no-knock entry.[3] The first officer related two incidents which occurred two years prior to the execution of the search warrant that is the subject of this appeal. This officer testified that he had a confidential informant make a controlled drug buy from Craft in September of 1989. Approximately one week later, the CI attempted a second buy but did not complete it. Over defense objection to the hearsay, the officer testified that the CI stated that Craft ran him away from the house at gunpoint. This officer was unable to establish the CI's reliability. He acknowledged that he had used the CI only once, prior to these encounters with Craft, and that he was never used again. Also, no charges were ever filed against Craft as a result of the controlled buy. During the motion hearing, the trial judge observed that there was a basic problem with this CI not being reliable.
The following exchange of questions and answers between the prosecutor and the officer regarding the 1989 incident occurred during the hearing:
Q. And did you at the time this occurred in '89, did you do anything subsequent thereto to confirm anything that the informant might have told you?
A. Yes, sir.
Q. And what was that?
A. I don't know how to particularly answer that question. Street knowledge and, you know, knowledge from other officers in reference to him having carried a weapon on his person.
THE COURT: I can't hear you.
A. Other officers and street knowledge in reference to information obtained, being obtained from these people that the suspect or the defendant was carrying *1014 weapons, had one on his person at the time of this incident.
The second officer testified that he had a CI make the controlled drug buy that was outlined in the probable cause statement for the search warrant executed on September 26, 1991. Over defense objection, the officer testified that the CI told him that Craft had listening devices with which he could hear anybody approaching the house and that he had a police scanner. When asked why the emergency response team was used to execute this search warrant, the officer responded that, based on the information given to him by the CI, Craft was known for violence and has been known to be in possession of firearms. When asked if the basis for the CI's knowledge of the firearms was by observation, the officer replied, "That's correct." The trial court found that the evidence presented by the two officers was sufficient to establish an officer peril exception. Applying the particularized approach mandated by Bamber, we disagree.
The information provided by the CI in 1989 was too unreliable. Even if the reliability of the CI had been established, the information was too stale to provide a reasonable belief that there would be officer peril two years later in 1991. Likewise, the second CI's hearsay statements that Craft was known to possess firearms was insufficient to support the officer peril exception. While the reliability of this CI may have been established, the state did not establish that it was reasonable for the officer to rely upon the information provided as a justification for not complying with the knock-and-announce procedure. No testimony was presented regarding when the CI obtained the information that Craft was known to possess firearms, from whom this information was obtained, how it was obtained, when any personal observations may have been made, what they were, or where they were made. It may be that the officer could have supplied additional testimony to establish a basis for a reasonable belief that the officers' peril would have been increased had they complied with the knock-and-announce requirement at the time of the execution of the warrant. However, such testimony was not presented. Other than the hearsay from an unreliable informant regarding an incident in 1989, the testimony presented may be characterized as the type of generalized knowledge that the Bamber court found to be insufficient.
Further, a CI's statement that Craft had listening devices and a police scanner does not justify entry without knocking and announcing. Given that the purpose of the knock-and-announce statute is to give notice to the occupants that law enforcement officers are present, the fact that Craft may have been able to independently obtain this information shortly before the officers would be required to announce their presence does not, in and of itself, give rise to a reasonable belief by the officers that they would be in danger. It is significant to note that none of the officers provided any case specific explanation that reasonably caused them to believe that Craft may harm them.
This case is distinguishable on its facts from our previous decision in State v. Avendano, 540 So.2d 920 (Fla. 2d DCA 1989), where a reliable CI provided information that the defendant and two others would be armed on the morning of the execution of the search warrant in case something went wrong with the planned drug deal. In the present case, the evidence was merely speculation based upon stale and generalized information. An officer's belief that he or she may be in peril if the knock-and-announce procedure is followed should be based on particular circumstances existing at the time of the entry and should be grounded on something more than generalized knowledge that a defendant has been known to carry a weapon at some time in the past. See Bamber, 630 So.2d 1048; Benefield, 160 So.2d 706.
Accordingly, we reverse and remand with directions that the defendant be discharged because the issues raised in the motion to suppress were dispositive.
FRANK, C.J., and PATTERSON and FULMER, JJ., concur.
NOTES
[1] Section 933.09 provides: "The officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of his authority and purpose he is refused admittance to said house or access to anything therein."
[2] "[W]e conclude that even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted." 160 So.2d at 710.
[3] Officers testified that the search warrant was a "no-knock warrant." No-knock warrants are not authorized in Florida. State v. Bamber, 630 So.2d 1048, 1050-1051 (Fla. 1994).