913 So.2d 19 (2005)
Searn Jerome SIMMONS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 2D04-2491, 2D04-2795.
District Court of Appeal of Florida, Second District.
September 14, 2005.
Rehearing Denied October 28, 2005.
*20 Varinia Van Ness of The Law Offices of Van Ness & Van Ness, P.A., Sarasota, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
*21 WHATLEY, Judge.
In this consolidated appeal, Searn Jerome Simmons challenges his convictions in Sarasota County of possession of marijuana with intent to sell and possession of a firearm and his conviction in Manatee County of possession of marijuana with intent to sell or deliver. He argues that the Sarasota court erred in denying his motion to suppress and the Manatee court erred in revoking his probation. We reverse Simmons' Sarasota County convictions and affirm the Manatee County order of revocation of probation.

Sarasota County Convictions
During the course of an investigation into what it called the Mitchell Marijuana Trafficking Organization, the Sarasota County Sheriff's Department began surveillance of Simmons and his residence. Simmons was arrested after a search warrant for his residence was executed and marijuana and a firearm were found. After he unsuccessfully moved to suppress those items, Simmons entered a plea of no contest, specifically reserving his right to appeal the ruling on the motion to suppress.
The State argues that this issue was not preserved for appeal because there was no finding or agreement that the motion to suppress was dispositive. While the record reveals that the prosecutor stated that the motion clearly was dispositive and defense counsel essentially agreed, the trial court did not make a ruling one way or the other. While "[i]t is the trial court's duty to announce whether preserved issues are dispositive ... [and] typically we would remand for a determination of whether the preserved issue is dispositive, that is not necessary in this case because the denial of the motion to suppress ... in this possession case is dispositive." Ramsey v. State, 766 So.2d 397, 397 n. 1 (Fla. 2d DCA 2000). Accordingly, the ruling on Simmons' motion to suppress is properly before this court for review.
Simmons argues that the trial court erred in denying his motion to suppress because the officers executing the search warrant failed to knock and announce in compliance with section 933.09, Florida Statutes (2003). In the alternative he argues that the officers failed to wait a reasonable time for him to respond to their knock.
Section 933.09 provides that law enforcement officers may forcibly enter a home to execute a search warrant only after announcing their authority and purpose and then being refused entry. See Holloway v. State, 718 So.2d 1281 (Fla. 2d DCA 1998). While there was some discrepancy in the officers' testimony regarding whether they knocked on Simmons' door before breaking it down, the officers' testimony is clear that if they did knock, they did not wait a sufficient amount of time to allow Simmons to respond. The maximum amount of time testified to was six seconds from the time the officers approached the door and began knocking until the time they threw a distraction device into the house. See Holloway, 718 So.2d 1281 (holding couple of seconds between announcing and ramming door open insufficient); Craft v. State, 638 So.2d 1011 (Fla. 2d DCA 1994) (same).
"This court must presume that a search that does not comply with the knock-and-announce rules is invalid, unless the State proves that the officers' conduct falls within a recognized exception...." Holloway, 718 So.2d at 1282 (citing Benefield v. State, 160 So.2d 706 (Fla.1964)). The supreme court has recognized four exceptions to the knock-and-announce rule:
(1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified *22 in the belief that the persons within are in imminent peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted.
Benefield, 160 So.2d at 710. Whether an exception is present in a given case must be determined by examining the particular facts of that case. Holloway, 718 So.2d 1281; Craft, 638 So.2d at 1014 (citing State v. Bamber, 630 So.2d 1048 (Fla.1994)).
The State argues that the officer peril exception applied in this case for the following reasons: the officers had reason to believe that Simmons would be armed with a firearm because they knew his criminal history and that it included arrests for violent crimes; they knew that other members of the drug ring they were investigating carried guns; and the fact that Simmons was not answering the door for his girlfriend created a reasonable fear that Simmons was arming himself. Officers testified at the suppression hearing that they believed exigent circumstances existed because several men saw the SWAT team approaching Simmons' house as the men were leaving the house. The officers believed the men could have called Simmons to warn him and that Simmons might arm himself. The officers also cited their fear that the woman knocking on the front door as they approached was warning Simmons of their presence. These reasons are insufficient to establish the officer peril exception because they were not based on any present knowledge or evidence that Simmons was armed, had access to a weapon, or had a propensity for violence.
An officer's belief that he or she may be in peril if the knock-and-announce procedure is followed should be based on particular circumstances existing at the time of the entry and should be grounded on something more than generalized knowledge that a defendant has been known to carry a weapon at some time in the past.
Craft, 638 So.2d at 1014 (holding that officer peril exception was not established because confidential informant's information regarding Craft allegedly possessing a weapon two years earlier was stale). See Holloway, 718 So.2d at 1282 (holding that officer peril exception was not established because although officers testified that search was hazardous because confidential informant implied a firearm was present at search location, neither search warrant nor affidavit referred to alleged presence of firearm and confidential informant's implication was not reliable); State v. Stepp, 661 So.2d 375 (Fla. 2d DCA 1995) (noting that neither original police report, affidavit, or search warrant mentioned weapons in house to be searched; neither confidential informant nor anyone else indicated defendant had propensity for violence). See also Richardson v. State, 787 So.2d 906, 908-09 (Fla. 2d DCA 2001) ("We can envision any number of particular circumstances permitting the police to wait only a minimal amount of time before entry without violating the statute or constitution.... Evidence in the affidavit or the search warrant itself might indicate the likelihood of weapons, the occupant's violent predisposition, or other forms of officer peril.").
Detective Wallace prepared the affidavit for the search warrant, and it states that Simmons has a criminal record dating back to 1987. The list of his offenses that is then set forth includes three arrests involving a weapon or violence: carrying a concealed firearm, aggravated battery on a police *23 officer, and aggravated assault with a weapon. However, the list indicates that Simmons was not convicted of these three offenses. At the suppression hearing the lieutenant in charge of the SWAT team that executed the search warrant testified that he obtained Simmons' criminal history prior to planning the execution of the warrant. That history contained the dates and disposition of the offenses with which Simmons had been charged. When defense counsel elicited from him that the 1992 aggravated battery conviction was nolle prossed, the State said it would stipulate to Simmons' whole history, including the facts that the 1993 aggravated assault charge was abandoned and the concealed firearm conviction was from 1988. Detective Wallace testified that during his surveillance of Simmons, he never observed Simmons with a weapon or being violent or aggressive. These facts reveal that the particular circumstances existing at the time of the execution of the search warrant did not form the basis for a reasonable belief on the part of the officers that exigent circumstances justified their failure to comply with the knock-and-announce rules. See Craft, 638 So.2d at 1014.
Simmons also argues that there were several problems with the search warrant, but we find that argument to be without merit. Accordingly, in light of our determination that the search warrant was not properly executed, we reverse Simmons' convictions in Sarasota County of possession of marijuana with intent to sell and possession of a firearm and, because the motion to suppress was dispositive, direct that Simmons be discharged from those convictions.

Manatee County Probation Revocation Order
In the Manatee County case, the trial court revoked Simmons' probation for possession of cannabis with intent to sell or deliver after finding that he violated conditions 4, 5, and 10 of that probation. Simmons argues that the State failed to prove that he willfully and substantially violated the conditions of his probation requiring him to procure the consent of his probation officer before changing his residence (condition 4), live without violating the law (condition 5), and promptly and truthfully answer all inquiries (condition 10).
With regard to condition 4, Simmons had given his probation officer an address in Bradenton. The State proved by a preponderance of the evidence that Simmons had changed his residence without procuring the consent of his probation officer when Detective Wallace testified that Simmons called an address in Sarasota his home during the suppression hearing in Sarasota County.[1]
In light of the above and the probation officer's testimony that Simmons continued to list the Bradenton address on his monthly reports up until the time of his arrest in November 2003, the State also proved by a preponderance of the evidence that Simmons failed to promptly and truthfully answer all inquiries as required by condition 10.
*24 The trial court found that Simmons violated condition 5 because of his Sarasota County convictions. However, the exclusionary rule applies in revocation of probation proceedings. Consequently, our reversal of Simmons' Sarasota County convictions based on the trial court's erroneous denial of his motion to suppress eliminates the alleged violation of condition 5 requiring that Simmons live without violating the law. See Morse v. State, 604 So.2d 496 (Fla. 1st DCA 1992).
Thus, the question is whether the trial court would have revoked Simmons' probation absent the violation of condition 5. See Olvey v. State, 707 So.2d 1189 (Fla. 2d DCA 1998). In ruling that Simmons had violated his probation, the trial court stated that there was sufficient evidence under the applicable burden of proof that Simmons had violated all three conditions of probation. Although the trial court did not say whether it would revoke Simmons' probation absent one or more of the alleged violations, we are confident that it would have revoked Simmons' probation based on the violations of conditions 4 and 10 because of the strong evidence of those violations in the form of Simmons' admission at the suppression hearing to living at the Sarasota address.
Accordingly, we affirm the Manatee County order revoking Simmons' probation.
Sarasota County convictions reversed and remanded for discharge; Manatee County revocation order affirmed.
LaROSE, J., Concurs.
VILLANTI, J., Concurs specially.
VILLANTI, Judge, Specially concurring.
Although I concur in the result, I write separately to note that this reversal should not reflect poorly on the SWAT team members because, as depicted in the videos, they performed their duties admirably, efficiently, and with due regard for officer and civilian safety. The basis justifying a request for SWAT team usage in connection with the execution of a warrant is subject to internal, and somewhat discretionary, "rules" of the Sarasota County Sheriff's office. Apparently, the final say as to whether to deploy the SWAT team resides with the SWAT team supervisor who is compelled to engage in an unenviable totality analysis involving factual matters, many of which are subject to not only dispute, but also speculation as to relevance and future events.
Once the decision to use SWAT is made, the next decision is when to deploy the entry on a no-knock basis. The fact that approval for SWAT team usage was given does not dispense with the supervisor's need to make this decision. Because Florida does not authorize the issuance of no-knock warrants, Bamber, 630 So.2d 1048, the decision to enter on this basis can be made only after arrival at the scene. To be valid, a no-knock entry must be based upon the particularized exigent circumstances described in the majority opinion. The supervisor directing the execution of the warrant must have almost swami-like powers to get it right, and the supervisor's decision is only as good as the information he is provided. Here, the supervisor's decision to make a no-knock entry was flawed because of his reliance upon incorrect information.
Under current case law, the time frame separating a "good" knock-and-announce case from a "bad" one, as this case demonstrates, can be as little as a few seconds. The majority correctly point to record facts mandating suppression because controlling legal authority holds that due notice was lacking and insufficient officer *25 safety grounds existed to excuse such notice. Perhaps it is time for the legislature to revisit the area of knock and announce with the specific goal of giving officers greater guidelines in an area that is presently defined on only a case-by-case basis.
NOTES
[1] At the suppression hearing in Sarasota County, the State raised the issue of Simmons' standing to challenge the motion to suppress. The Sarasota court recognized that the State was laying the groundwork for a violation of probation, but nonetheless stated that it was disingenuous for Simmons to say that the Sarasota address was not his residence as far as the violation of probation was concerned. It advised Simmons that he was going to have to make a decision, and defense counsel proceeded to call Detective Wallace to prove standing. The Sarasota court found that Simmons had proven standing. The Manatee court allowed the suppression order to be entered into the record in its case.