724 So.2d 592 (1998)
Anthony Lavon BRAHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 97-02559
District Court of Appeal of Florida, Second District.
November 20, 1998.
*593 James Marion Moorman, Public Defender, and Julius J. Aulisio, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
CAMPBELL, Judge.
In this "knock and announce" case, appellant challenges the denial of his motion to suppress cannabis and a firearm discovered during the execution of a search warrant at his mobile home in the early morning hours. The trial court viewed the video tape of the officers' entry and concluded that the totality of the circumstances justified a finding that this was not a "no-knock" case and that the motion to suppress was properly denied. We agree and affirm.
The facts reveal that on August 23, 1996, members of the special response unit arrived at appellant's very small trailer early in the morning, between 4 a.m. and 6 a.m. They drove up in several vehicles, exited the vehicles, and walked to the door. As they arrived at the door and before they knocked and announced, they heard the phone ringing, and no one was picking it up. They also heard someone moving around in the rear of the trailer. Sergeant Potorff then banged loudly on the door three or four times with his searchlight/flashlight. He announced as loudly as he could, "Glades County Sheriff's OfficeSearch Warrant." No one came to the door. Another officer who was present at the scene, Officer Bronson, testified that Sergeant Potorff then repeated the banging and the announcement. When no one answered the door, the team made forcible entry with a hooligan bar and a sledgehammer. While holding the door open to allow the other officers to enter, Potorff continued yelling, "Glades County Sheriff's Office Search Warrant."
Potorff explained that the team made forcible entry because, despite the fact that they could hear someone moving around in the trailer, no one called out, "just a minute," no one picked up the phone, and no one came to the door. According to Potorff, they waited five to ten seconds before they made entry. The officers suspected that the phone call was from someone in the neighborhood warning the occupants of the officers' presence. Potorff testified that because of the officers' knowledge that appellant possessed a weapon inside the trailer, for officer safety, they made entry. On cross-examination, Potorff said that the officers believed that the occupants knew the officers were there, but simply did not come to the door.
Once inside, the officers found appellant standing in the kitchen. They also found forty-one bags of marijuana in the living room and a firearm in plain view on the entertainment center, which was also in the living room. Officer Bronson testified that it is standard procedure to secure a firearm during execution of a search warrant for the safety of all involved.
As a result of the search, appellant was charged by information with possession of cannabis over twenty grams (§ 893.13(6)(a), Fla. Stat. (1995)), possession of cannabis with intent to sell (§ 893.13(1)(a), Fla. Stat. (1995)), and possession of a firearm with the serial number removed (§ 790.27, Fla. Stat.(1995)).
Appellant moved to suppress the evidence and certain statements he had made, arguing that the officers had not waited long enough before they made forcible entry, and that this "no-knock" search tainted the evidence that was subsequently collected and the statements that he made. The court denied the motion to suppress, stating:
[G]iven the totality of the circumstances as portrayed on the video tape and the testimony *594 of the witnesses, the officers were justified in concluding that admittance to the house was being refused by people who were moving about inside and had a reasonable opportunity to be aware of the presence of law enforcement officers. Given the force of the knocking and the volume of the announcement of a search warrant by Glades County Sheriff Office, the occupants could not reasonably have been unaware that there were law enforcement officers seeking admittance to the residence for a lawful purpose, that is, execution of a search warrant. The Court having concluded that based upon the testimony and the evidence, this was not a "no-knock" search for the reasons set forth above but was executed in accordance with F.S. 933.09 and F.S. 933.10.
We agree with the trial court that this was not a "no-knock" search, that given the totality of the circumstances the officers were justified in concluding that they were being denied admittance, and that the evidence that was discovered following the officers' forcible entry was properly admitted. A "no-knock" search occurs where officers, prior to executing a search warrant at a residence, do not knock and announce their presence before entering the residence. "No-knock" searches are generally disfavored except in certain enumerated exigent circumstances. See State v. Bamber, 630 So.2d 1048 (Fla.1994); Benefield v. State, 160 So.2d 706 (Fla.1964).
While the amount of time between the initial knock and announce and the subsequent entry was admittedly short, the trial judge, who had the benefit of viewing the videotape and hearing the volume of the banging and the announcement, concluded that the officers waited a sufficient amount of time to reasonably conclude that the occupants of the house were refusing them admittance. The record on appeal reveals no reason to disturb that finding.
Appellant cites Craft v. State, 638 So.2d 1011 (Fla. 2d DCA 1994), and Mense v. State, 632 So.2d 185 (Fla. 3d DCA 1994), in support of his argument that the officers did not follow proper knock-and-announce procedure under section 939.09, Florida Statutes (1995). However, the facts in those cases were not similar. In those cases, the officers broke in within seconds of, or simultaneously with, the announcement of their presence. The court in Craft specifically found that the officers' haste prevented the defendant from having a reasonable opportunity to respond. By contrast, the occupants here had a reasonable opportunity to respond. The officers testified that as they approached the trailer, even before they knocked and announced their presence, they heard someone moving around inside the trailer and heard the phone ringing. It was clear that the occupants, or at least one of them, were not only awake, but were moving around inside. Moreover, the record reveals that the trailer was so small that the loud banging and shouting would have been heard anywhere within the trailer. No one came to the door, called out "just a minute," or otherwise signaled that the officers would be admitted. Based on these facts, we agree with the trial court that the officers were justified in believing that the occupants of the trailer had a reasonable opportunity to be aware of the presence of the officers and simply chose not to admit them.
Accordingly, given the trial court's unique ability to view the videotape and given the facts apparent from the record, we conclude that the trial court was correct in finding that the officers were being denied admittance, and so were entitled to enter by force.
Although the court did make a finding that was not supported by the record (the agricultural nature of the community), we will not disturb the court's order so long as other findings and the order itself finds record support. Since we believe that is the case here, we find no error in the court's determination that this was not a "no-knock" search.
Appellant also argues that the court should have suppressed the firearm because the officers did not know it was contraband until they picked it up and discovered the serial number missing. It is appellant's position that the officers' search thus exceeded the scope of the warrant. However, since the firearm was discovered in plain view *595 inside the trailer, and the trailer's occupants were still inside the trailer when the officer picked up the firearm to secure it, we conclude that the officers were justified in picking up the firearm for safety reasons.
Potorff testified that he noticed the gun on the entertainment center when the officers entered the trailer. He did not secure it at that time because he was waiting for Officer Bronson to secure it. Officer Bronson testified that at the time that he secured the firearm, appellant was sitting on the couch handcuffed and under the control of the officers, and his female companion was in the bathroom getting dressed. Two officers were guarding the bathroom door and another was stationed between the bathroom and the living room. Bronson testified that he could not see the tainted serial number until he picked up the gun.
Although appellant cites Ray v. State, 634 So.2d 695 (Fla. 1st DCA 1994), for the proposition that the officers were not justified in picking up the gun, we disagree with the majority decision in Ray and, in any event, find it distinguishable. In Ray, the home was not occupied when the search warrant was executed. The warrant specified that the officers were to search for drugs. In the course of searching for drugs, an officer lifted up a mattress and discovered a firearm underneath it. When he picked up the firearm and turned it over, he discovered that the serial number was missing. The court there rejected the State's argument that the officer needed to pick up the gun in order to search underneath it for marijuana, concluding that the officer had extended the search beyond the scope permitted by the warrant.
By contrast, the weapon here was located in plain view on top of the entertainment center which was in the living room and next to the hallway that led back to the bedrooms and the bathroom. The home's occupants were still inside. Although appellant was handcuffed and apparently under the control of the officers, his companion was not handcuffed and would have had access to the firearm as she passed down the hall from the bathroom to the living room. The officers testified that they secured the firearm as part of the search in order to protect the safety of the officers and the occupants of the trailer. We are persuaded that in these circumstances, where the occupants are still inside the residence and the firearm is not only in plain view but is accessible to the occupants, the officers were justified in picking up the weapon to secure it, and their action did not exceed the scope of the search warrant.
Accordingly, the trial court did not err in denying appellant's motion to suppress either the marijuana or the firearm.
Affirmed.
PARKER, C.J., and QUINCE, J., Concur.