787 So.2d 906 (2001)
John RICHARDSON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-1885.
District Court of Appeal of Florida, Second District.
May 9, 2001.
Rehearing Denied June 20, 2001.
*907 James Marion Moorman, Public Defender, and Bruce P. Taylor, Assistant Public Defender County; Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Mr. Richardson appeals the denial of his dispositive motion to suppress arguing that law enforcement officers failed to comply with section 933.09, Florida Statutes (1999), the "knock and announce" rule, by failing to wait a reasonable amount of time before forcibly entering his residence. We agree and reverse.
On November 5, 1999, in the darkness of the early morning hours, around 5:30 a.m., members of the Bradenton Police Department executed a search warrant at a residence in that city. Based on undercover operations, they had reason to believe that cocaine had been sold from that home, but the affidavit upon which the search warrant was based contained no mention of a firearm or threat of violence. Detective Leo Donnelly, the leader of the eight-person entry team, was to "knock and announce" the officers' presence and reason for entering and be the first to enter. At the suppression hearing he testified that he did three sets of three loud knocks on the door while yelling "Bradenton Police Department, search warrant," pausing slightly between each set and then getting "out of the way." The team heard no sounds from within the residence. A battering ram was used to open the door. The detective estimated that ten seconds elapsed between his first knock and the officers' entry into the home.
Mr. Richardson testified that at the time of the officers' entry he was trying to sleep in a reclining chair that was only feet from the front door. All he heard was a "boom" and the officers were in the home and upon him before he could even make it out of the reclining chair. Mr. Richardson thought he was being robbed. Upon searching the residence, the officers seized cocaine and drug paraphernalia pursuant to the warrant, as well as a firearm they discovered in the bedroom.
At the suppression hearing Detective Donnelly and the officer who actually battered down the door each demonstrated the knock and announce technique they used at Mr. Richardson's residence. Each demonstration took nine to ten seconds. Officer Donnelly admitted that his training for executing search warrants did not include providing the occupant with an appropriate amount of time to respond to the search warrant announcement.
*908 The Fourth Amendment to the Constitution of the United States guarantees the people of this nation the right to be secure in their homes from unreasonable searches. Article I, section 12, of the Constitution of the State of Florida provides the identical guarantee. It is against the backdrop of this vital constitutional right that the government's procedure in this case must be measured.
Section 933.09 permits law enforcement, in the execution of a search warrant, to break open an outer door where "after due notice of the officer's authority and purpose, he or she is refused admittance to said house." The policy underlying section 933.09 "derives from the sentiment that there `is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the law protects its entrance so rigidly.'" State v. Bamber, 630 So.2d 1048, 1053 (Fla.1994) (quoting Benefield v. State, 160 So.2d 706, 709 (Fla.1964)). Where officers knock, announce their authority and purpose, and enter with such haste that the occupant does not have a reasonable opportunity to respond, the search violates section 933.09. Holloway v. State, 718 So.2d 1281, 1282 (Fla. 2d DCA 1998). See also Craft v. State, 638 So.2d 1011 (Fla. 2d DCA 1994); Rodriguez v. State, 484 So.2d 1297 (Fla. 3d DCA 1986). Cf. Braham v. State, 724 So.2d 592 (Fla. 2d DCA 1998) (holding that five- to ten-second wait before forcible entry into very small mobile home was reasonable where deputies could hear someone moving about inside, no one picked up a ringing phone that officers believed was a neighbor trying to warn the occupants of the presence of police, and no one responded to the knock or came to the door).
Here, unfortunately, the officers had not been trained to permit an occupant time to respond, and, consequently, none was provided. We find this defect in training troubling because of its impact upon a basic constitutional and statutory protection. Before law enforcement may forcibly enter a home to execute a search warrant, section 933.09 imposes two requirements. First, law enforcement must provide due notice of their authority and purpose. The detective's announcement, in this instance, met this requirement. Second, the statute requires that law enforcement be refused admittance. Refusal can be express or implied, and lack of response is deemed a refusal. United States v. Moore, 91 F.3d 96 (10th Cir. 1996). But, whether the ultimate refusal will be express or implied, the statute and case law interpreting it require that some quantity of time, sufficient under the particular circumstances, be permitted for an occupant to respond. In this case, especially because the search warrant was executed at a time of day when it was reasonable that persons inside the house would be sleeping, hardly any time was permitted for response, and thus the statute was violated. See Griffin v. United States, 618 A.2d 114 (D.C.1992) (holding thirty-second wait at 1:40 a.m. unreasonable).
We can envision any number of particular circumstances permitting the police to wait only a minimal amount of time before entry without violating the statute or the constitution. For example, sounds emanating from the interior might suggest imminent resistance, the destruction of evidence, or other relevant scenarios. Braham, 724 So.2d 592; United States v. Markling, 7 F.3d 1309 (7th Cir.1993) (finding no violation where defendant in small hotel room and officers had been told that defendant was likely to destroy drugs on police approach). Evidence in the affidavit or the search warrant itself might indicate the likelihood of weapons, *909 the occupant's violent predisposition, or other forms of officer peril. See United States v. Nabors, 901 F.2d 1351 (6th Cir. 1990). None of these circumstances was present in Mr. Richardson's case.
In failing to permit time for a response in executing a search warrant, the police follow a recipe for tragedy. We wish to see neither our law enforcement officers nor our citizens harmed. In this day and age in our country, many citizens lawfully possess firearms and are aware of the frequency of home invasion robberies. Awakening citizens from slumber and depriving them of an opportunity to recognize law enforcement's presence and purpose could result in a misunderstanding with horrific consequences.
Americans have long subscribed to the English common law principle that one's home is one's castle, so that not even the sovereign or its soldiers may enter without the owner's permission.
Entering one's home without legal authority and neglect to give the occupants notice have been condemned by the law and the common custom of this country and England from time immemorial. It was condemned by the yearbooks of Edward IV, before the discovery of this country by Columbus.... William Pitt categorized a man's home as his castle. Paraphrasing one of his speeches in which he apostrophized the home, it was said in about this fashion: The poorest pioneer in his log cabin may bid defiance to the forces of the crown. It may be located so far in the backwoods that the sun rises this side of it; it may be unsteady; the roof may leak; the wind may blow through it; the cold may penetrate it and his dog may sleep beneath the front steps, but it is his castle that the king may not enter and his men dare not cross the threshold without his permission. This sentiment has moulded our concept of the home as one's castle as well as the law to protect it. The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call.... The law so interpreted is nothing more than another expression of the moral emphasis placed on liberty and the sanctity of the home in a free country. Liberty without virtue is much like a spirited horse, apt to go berserk on slight provocation if not restrained by a severe bit.
Benefield v. State, 160 So.2d 706, 709 (Fla. 1964). If the constitutional protection of this liberty is to be more than mere words, it must be adhered to and strictly enforced; otherwise, the constitution will be only words and not "words that we live by."
Reversed and remanded with instructions to grant the motion to suppress and discharge Mr. Richardson.
DAVIS, J., concurs.
ALTENBERND, A.C.J., concurs specially.
ALTENBERND, Acting Chief Judge, Concurring.
I fully concur in this opinion. However, in 1990 I suggested that the exclusionary rule was neither an essential remedy nor the best method to enforce section 933.09, Florida Statutes (1999). See State v. Robinson, 565 So.2d 730 (Fla. 2d DCA 1990). At that time, it was not clear whether the knock-and-announce rule was a statutory rule based on the common law or a procedure mandated by the Fourth Amendment. The United States Supreme Court has now held that the common law knock-and-announce principle forms a part of the Fourth Amendment reasonableness inquiry. Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). In footnote 4 to the Wilson opinion, however, *910 the Supreme Court expressly reserved the issue of whether the exclusionary rule must be employed as the remedy for all knock-and-announce violations. 514 U.S. at 937 n. 4, 115 S.Ct. 1914.
Since Robinson was issued, at least two courts have declined to employ the exclusionary rule to enforce the knock-and-announce rule in cases where the police officers' violation was more technical than substantial. People v. Hoag, 83 Cal. App.4th 1198, 100 Cal.Rptr.2d 556 (2000); People v. Stevens, 460 Mich. 626, 597 N.W.2d 53 (1999). These cases basically conclude that the evidence would have been discovered a few seconds later with proper announcement and that a technical violation involving only insufficient delay at the door is not a justification to suppress dispositive evidence. Although these cases are still a minority viewpoint, I continue to believe that the role of the exclusionary rule as the primary remedy for knock-and-announce violations warrants reexamination by courts and legislatures.
The exclusionary rule is essentially a remedy to compensate a victim for the injury caused by a breach of the duties that law enforcement officers owe all persons under the Fourth Amendment. When a defendant should not have been stopped or should not have been searched, it makes sense that the defendant is entitled to a remedy of evidence exclusion because, but for the unconstitutional conduct, the police would not possess the evidence. The possession of the evidence by the police is a part, and often the primary element, of the victim's injury. Roughly analogous to an award of damages in a negligence action, the law theorizes that the compensatory exclusion of evidence will have a deterrent effect upon future police misconduct.
In the case of a knock-and-announce violation, the exclusionary remedy normally seems unrelated to the injuries caused by the police misconduct. Because the police have already obtained a valid warrant, they have the right to obtain the evidence. Thus, in a knock-and-announce case, there is no causal connection between the police misconduct and the ultimate possession of the evidence by the police. Analogous to the injuries in a civil claim for trespass, the victim's injuries in most knock-and-announce violations are: (1) an invasion of privacy beyond that authorized by a warrant, and (2) the fear and mental anguish caused by the police when bursting into the home. These injuries may entitle the defendant to some form of compensation, but I fail to see how the exclusionary rule is an adequate or accurate measure of the injury or damage. For example, a defendant's injuries for the invasion of privacy and the mental anguish may be roughly the same whether the evidence collected is drug paraphernalia or a dead body, but the exclusionary rule provides one defendant with a far greater remedy than the other.
This case demonstrates that Benefield, 160 So.2d 706, and its progeny have failed to have the appropriate impact on law enforcement. The fact that a few state attorneys have had criminal prosecutions hindered by the suppression of evidence over the last forty years has apparently not prompted the Bradenton Police Department to provide adequate education about the knock-and-announce rule to the team of officers who serve warrants. The Fourth Amendment would be better served by an order requiring the police department to conduct a proper training course for all of those officers than by an order suppressing some drugs in this prosecution by the state attorney.
It is admittedly difficult for the courts to fashion a remedy superior to the exclusionary rule. This court could not realistically order police education and monitor compliance. A trial court has no authority to *911 fine a department for a violation or to reprimand specific police officers, especially when the officers who violate section 933.09 are not parties before the court. A convicted prisoner's right to file a civil action against the police department may not serve as an adequate sanction to deter this type of police mistake.
The legislature may have the power to create adequate, alternative remedies and sanctions to safeguard this important constitutional right that would not compel the courts to use the exclusionary rule as the exclusive remedy for knock-and-announce violations. Adequate remedies directed toward the persons who actually violate these constitutional rights would do far more to protect both the public and law enforcement from the dangers of unannounced entries into homes, than our current remedy. Our current method is not a deterrent to the police nor fair compensation to a victim; it merely allows an occasional lucky defendant to win Florida's knock-and-announce, five-seconds-too-early, exclusionary rule lottery.