835 So.2d 397 (2003)
STATE of Florida, Appellant/Cross-Appellee,
v.
Gregory CASSELLS, Appellee/Cross-Appellant.
No. 2D01-5606.
District Court of Appeal of Florida, Second District.
January 31, 2003.
*398 Charlie Crist, Attorney General, Tallahassee, and Davis G. Anderson, Jr., Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant Public Defender, Bartow, for Appellee.
ALTENBERND, Judge.
The State appeals an order suppressing evidence under the knock-and-announce rule, section 933.09, Florida Statutes (2001). We reverse because the initial announcement in this case was given to Gregory Cassells in the driveway of his home as he exited his car. Mr. Cassells accurately informed the deputies that the home was unoccupied. Under these circumstances, an entry only a few seconds after the subsequent announcement at the door is not a statutory violation justifying exclusion of the evidence against Mr. Cassells.
Mr. Cassells has cross-appealed a suppression issue as permitted by Lopez v. State, 638 So.2d 931 (Fla.1994). We dismiss that appeal without prejudice to his right to raise the issue on direct appeal. We conclude that an Anders brief should not be filed in a Lopez cross-appeal.

I. THE KNOCK-AND-ANNOUNCE ISSUE
In May or early June 2001, a confidential informant working for the Highlands County Sheriff's Office purchased cocaine and marijuana at Mr. Cassells' residence in Avon Park, Florida. Based on this investigation, the sheriff obtained a search warrant to look for drugs and paraphernalia in the home. A few days later at approximately 7:30 p.m., a small group of deputies went to the home to conduct surveillance and execute the warrant, if possible. Upon arrival, the deputies observed that Mr. Cassells' car was not in the driveway and delayed execution of the warrant. Shortly thereafter, the officers recognized Mr. Cassells as he drove into the driveway. The deputies immediately pulled into the driveway behind Mr. Cassells's car. In addition to Mr. Cassells, there were three other occupants in the car, who were all young children.
*399 One of the deputies approached Mr. Cassells and informed him that they were there to execute a warrant. Another deputy took charge of the children to assure their safety during the search. As Mr. Cassells was exiting his car, he was asked if the home was occupied. Mr. Cassells stated that the house was unoccupied. The entry team then went to the front door. They knocked and announced, and waited approximately ten seconds before making a forceful entry into the home. No one was home. Thereafter, the warrant was read to Mr. Cassells, and he assisted the deputies in finding drugs and other contraband in the house.
Mr. Cassells filed a motion to suppress the evidence found during the search of his home. The trial court conducted a thorough hearing and entered a thoughtful order. Expressing some misgivings, the trial court concluded that the evidence must be suppressed because of this court's decision in Richardson v. State, 787 So.2d 906 (Fla. 2d DCA 2001). In Richardson, this court suppressed evidence when the police waited for only ten seconds before conducting a forceful entry into the home.
It might arguably assist the police if the legislature established waiting periods that presumptively satisfied section 933.09 under most sets of circumstances.[1] As it stands, the courts actually set case-specific, minimum time standards that depend on all of the relevant circumstances.[2] In Richardson, a ten-second wait at the front door was insufficient for a search of a home at 5:30 a.m. when the police clearly anticipated that the home was occupied. In Richardson, the police conducted the search in the dark, at a time when they reasonably expected that occupants would still be asleep. Even in a case involving a small home, an occupant could not reasonably be expected to open the door within ten seconds if he or she were asleep at the time of the knock.[3]
In this case, the officers arrived before dark at a time when they would expect any occupant to be awake. They confronted Mr. Cassells in the driveway. Not only did he claim that the home was unoccupied, but also the events in the front yard did not cause anyone to open the front door or exit the house. The witnesses' estimates of time varied, but approximately a minute elapsed from the time that the deputies first confronted Mr. Cassells until they entered the home. Thus, although the formal knock and announce at the door occurred only a few seconds before the door was forced open, *400 the announcement to Mr. Cassells had occurred far earlier.
Section 933.09 states:
The officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of the officer's authority and purpose he or she is refused admittance to said house or access to anything therein.
This statute does not contain any list of underlying policies nor does it mandate use of the exclusionary rule. The case law, however, typically justifies the use of the exclusionary rule to protect three underlying policies: (1) decreasing the risk of violence when executing a warrant, (2) protecting the privacy of the occupants of the home, and (3) preventing physical destruction of property. See State v. Bamber, 630 So.2d 1048 (Fla.1994) (citing 2 Wayne R. LaFave, Search and Seizure § 4.8(a) (2d ed.1987)). In this case, the information received from Mr. Cassells gave the deputies reason to believe that the risk of violence upon a civilian was low and that there were no occupants in the home with any expectation of privacy. As a practical matter, we know that the deputies could have waited longer and no one inside would have opened the door of this unoccupied house.
Thus, the primary underlying policy at issue in this case is the prevention of physical destruction of property. Mr. Cassells argues that the evidence located in the home should be suppressed because the deputies could have asked him for the key to the house and could have opened the door without damaging it. It is noteworthy that Mr. Cassells does not claim that he volunteered his key or urged them to use it before the door was forced open.
We do not wish to minimize the need for police to protect the physical property of citizens. On the other hand, we see little justification for the judiciary to create a "least destructive means" test that the police must pass to avoid the exclusionary rule. Any benefit derived from requiring the police to obtain and use keys during such entries in order to avoid risk of damage to doors could easily be offset by the increased risk of injury to the officers executing the warrant.
Accordingly, we reverse the order suppressing the evidence that was located in the home and remand for further proceedings.

II. THE CROSS-APPEAL
Although the trial court granted that part of Mr. Cassells' motion to suppress that relied upon the knock-and-announce rule, it denied another portion of the motion that sought to exclude drug paraphernalia Mr. Cassells tried to discard while being detained by the officers outside his home. Mr. Cassells has filed a timely cross-appeal of this suppression issue. The cross-appeal is authorized by the rule announced in Lopez v. State, 638 So.2d 931 (Fla.1994). However, Mr. Cassells' appellate attorney found no merit in the issue and filed an Anders brief.
The Anders procedures are necessary in final appeals because the defendant has a constitutional right to a final appeal, but the attorney is ethically prohibited from submitting frivolous arguments. See In re Anders Briefs, 581 So.2d 149 (Fla. 1991); Anders v. California, 386 U.S. 738, 742, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In the context of a final appeal, the client has no future remedy if the lawyer dismisses the appeal. We question whether the Anders procedure is appropriate in *401 this context.[4]
The cross-appeal permitted by the rule announced in Lopez is an unusual cross-appeal. Lopez allows the defendant in a criminal case to cross-appeal an issue in a nonfinal appeal initiated by the State so long as the defendant's issue is related to the State's issue and the adverse ruling is memorialized in the same order that the State seeks to review. This rule permits the defendant to cross-appeal an issue at a time when the defendant would have no right to initiate a nonfinal appeal. See Fla. R.App. P. 9.140(b). Thus, a Lopez cross-appeal expands the appellate court's scope of review to include an issue that it would not have had jurisdiction to review directly.[5]
Although rule 9.140(b)(4) does not expressly state that the decision to forego a cross-appeal of a nonfinal order in this context will not result in the defendant waiving the right to raise the issue on final appeal, such a policy has long been expressly stated in Florida Rule of Appellate Procedure 9.130(g).[6] It is clear to this court that a defendant can forego a Lopez cross-appeal without fear that he or she will be barred from raising the issue in a subsequent final appeal.[7] In other words, a Lopez cross-appeal is a purely optional procedure available to the defendant and it can be omitted with impunity.
Likewise, a Lopez cross-appeal can be voluntarily dismissed prior to its disposition on the merits without harm to the defendant. The defendant is free to pursue the issue at a later time because unconditional dismissals of nonfinal appeals are without prejudice. See Hammerl v. State, 779 So.2d 410, 411 (Fla. 2d DCA 2000). If anything, an Anders brief in such a nonfinal appeal could result in a decision affirming the trial court that might establish the law of the case. At least in the rare occasion where refinements in the law occurred after the nonfinal appeal and prior to the time for a final appeal, such a decision might actually prejudice the defendant.
We conclude that counsel is not ethically required to file an Anders brief in a cross-appeal of a nonfinal order. Instead, counsel should encourage the client to voluntarily dismiss the cross-appeal and raise the issue on final appeal. Hopefully, most clients will accept the advice of counsel and understand the wisdom of dismissing the cross-appeal. In the event that the client will not authorize such a dismissal, the lawyer should move to withdraw. Cf. In re K.W., 779 So.2d 292 (Fla. 2d DCA 1998) (outlining similar procedure in termination of parental rights case). This court will then permit the attorney to withdraw from only the cross-appeal and will also permit the defendant to file a pro se brief within forty-five days. If no pro se brief is filed, the cross-appeal will be dismissed and the dismissal will not affect the defendant's *402 right to raise the issue in a subsequent direct appeal. If the defendant files a pro se brief, the court may proceed to rule upon the merits of the nonfinal appeal.
In this case, counsel filed an Anders brief because no alternative method had been provided by this court. This court gave Mr. Cassells an opportunity to file a pro se brief, and no such brief was filed. Accordingly, we dismiss this cross-appeal.
WHATLEY and STRINGER, JJ., Concur.
NOTES
[1] For example, section 933.09 could provide that, absent exigent circumstances, if the police waited twenty seconds during hours that occupants are awake or forty seconds during times when occupants are expected to be asleep at a typical residence, the waiting period would create a rebuttable presumption of compliance with the statute. But see 2 Wayne R. LaFave, Search and Seizure § 4.6(b) n. 48 (3d ed.1996) (citing United States v. Jenkins, 175 F.3d 1208 (10th Cir.1999) (rejecting judicially created bright-line rule for determining waiting period after announcement)).
[2] Time periods less than five seconds are rarely deemed adequate, and periods in excess of fifteen seconds are often adequate. The window of greatest debate seems to center on the period of around ten seconds. See, e.g., United States v. Gallegos, 314 F.3d 456 (10th Cir. 2002).
[3] See United States v. Spikes, 158 F.3d 913, 927 (6th Cir.1998) (stating, "[t]he amount of time officers need to wait before entering a home necessarily depends on how much time it would take for a person in the house to open the door"). The court then went on to explain that "[w]hen the police execute a warrant in the dead of night or have some other reason to believe that a prompt response from the homeowner would be unlikely, the length of time the officers should wait increases." Id. at 927.
[4] We note that a defendant's lawyer cannot move to withdraw in this situation because representation must still be provided in the State's appeal in which the defendant is the appellee.
[5] In most, if not all, cases involving cross-appeals of final orders, the cross-appeal merely permits the appellee to file a tardy appeal of an issue that it could have presented to the appellate court by its own timely notice of appeal. See Fla. R.App. P. 9.110(g).
[6] "This rule shall not preclude initial review of a non-final order on appeal from the final order in the cause." Fla. R.App. P. 9.130(g).
[7] Obviously, defendants often enter into a plea while preserving the right to appeal an adverse ruling on a dispositive suppression issue. See, e.g., Craig v. State, 830 So.2d 906 (Fla. 2d DCA 2002).