ALTENBERND, Judge.
James Spradley appeals his judgment and sentence for armed trafficking in cocaine, operating a crack house, and possession of marijuana. Mr. Spradley pleaded no contest to the charges after the trial court denied his dispositive motion to suppress the evidence seized at his home that supported the charges. Mr. Spradley argues on appeal that the police violated Florida’s knock-and-announce statute by failing to wait a reasonable time before entering his residence to execute a search warrant. See § 933.09, Fla. Stat. (2003). Because the officers intentionally detonated an explosive “distraction device” during the fifteen seconds between knocking and announcing their presence and breaking down Mr. Spradley’s front door to gain entry into the residence, we reverse. Although in some circumstances a fifteen-second wait may be sufficient to satisfy the knock-and-announce requirement, the use of a “distraction device” during the fifteen seconds, as its name suggests, dramatically diminishes the ability of the occupants of a home to permit peaceable entry within the allotted time.
I. THE FACTS
On the evening of March 20, 2003, at 9:41 p.m., Mr. Spradley was at home. He was working on a car in his backyard with the help of a man who is unidentified in our record. There were two other unidentified people in the fenced-in backyard. Mr. Spradley’s girlfriend was inside their home. She was upstairs putting their five-year-old daughter to bed.
St. Petersburg police officers had a search warrant to enter this home. There is no dispute that they did not have exigent circumstances to enter this home without knocking and announcing. See, e.g., State v. Bamber, 630 So.2d 1048 (Fla.1994); Wilson v. State, 673 So.2d 505 (Fla. 1st DCA 1996). The officers arrived at 9:41 p.m. The testimony by the officers varied, but there were no fewer than eight officers and there could have been as many as sixteen. There were three supervising officers. This was a team trained to execute warrants. Mr. Spradley’s girlfriend testified that the officers wore dark paramilitary uniforms like a SWAT team and at least some of them had masks or covers over their faces.
Several officers were deployed to the rear of the house. They immediately confronted Mr. Spradley and the other man and ordered them to the ground. It is unclear from the record whether the offi *53 cers knew at that time that one of the men was Mr. Spradley or that he was a primary resident of the home. Other officers observed and detained two more unidentified people who were attempting to leave the backyard.
The officers organized an entry team in a line at the front of the house. There are two doors at the front entrance of the home. The first door is a standard wood or metal door to an enclosed porch. The second door is an iron-bar security door between the porch and living room.[1] It appears that the officers performed the knock and announce at the first door and were unaware of the second door until they entered the home. The officer in charge of this team testified that he was the officer who began knocking and announcing. He explained that he yelled as loudly as he could and banged on the first door. As soon as he finished knocking and announcing, he had the officers set off an explosive detonation device, which makes a very loud noise and apparently produces a flash of light if set off during evening hours. He then ordered the officers with the battering ram to break the door open. He testified that he waited about ten seconds before he gave this order and that it took a few more seconds to break through the second door. Thus, counting the time that the officers were actually using the battering ram to break down the two doors, the time between the initial knock and announce and entry was approximately fifteen seconds.
When the officers entered the home, they found evidence of drugs that all agree was dispositive as to the charges filed against Mr. Spradley. They also found his girlfriend and daughter upstairs. There were no other occupants of this home. Mr. Spradley’s girlfriend testified that she heard the distraction device but did not hear the officer knock and announce.
II. THE KNOCK-AND-ANNOUNCE RULE
Section 933.09 provides:
The officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of the officer’s authority and purpose he or she is refused admittance to said house or access to anything therein.
Section 933.09 thus requires law enforcement to provide due notice of their authority and purpose and to be “refused admittance” before they are authorized to forcibly enter a home. Kellom v. State, 849 So.2d 391, 394 (Fla. 1st DCA 2003). The refusal can be express or implied by a lack of response. Id. Wfiiere officers knock, announce their authority and purpose, and enter with such haste that the occupant does not have a reasonable opportunity to respond, the search violates section 933.09. See Richardson v. State, 787 So.2d 906, 908 (Fla. 2d DCA 2001).
The knock-and-announce rule has been described as fulfilling “a number of most worthwhile purposes.” Bamber, 630 So.2d at 1062 (Fla.1994) (quoting 2 Wayne R. LaFave, Search and Seizure § 4.8(a) (2d ed.1987)). Primarily, it is described as a rule that decreases the potential for violence during the execution of the warrant and one that protects the privacy of the occupants of the home, keeping them from being terrified by a forceful entry. Id.; see also Benefield v. State, 160 So.2d 706, 709 (Fla.1964) (“The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose *54 of his call. There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the law protects its entrance so rigidly.”). The knock-and-announce rule is also described as fulfilling the purpose of preventing destruction of private property. Bamber, 630 So.2d at 1052.
The statute does not state that evidence must be suppressed when the police violate its terms, but the United States Supreme Court has treated this knock-and-announce rule as an element of the reasonableness inquiry under the Fourth Amendment, Wilson v. Arkansas, 514 U.S. 927, 933, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), and courts have regularly enforced this statute by invoking the exclusionary rule, see, e.g., Richardson, 787 So.2d 906; State v. Robinson, 565 So.2d 730, 732 (Fla. 2d DCA 1990).
III. STANDING TO ENFORCE SECTION 933.09 AND ENTITLEMENT TO THE EXCLUSIONARY REMEDY
Although neither party has raised the issue, a careful reader of the facts will notice that Mr. Spradley was not inside the home at the time of the knock and announce. Thus Mr. Spradley’s standing to challenge a violation of this statute and to demand the remedy of exclusion of evidence due to the violation may be questioned.
Section 933.09 does not state that a defendant must be present inside the house in order to have standing to enforce this right or to obtain the remedy of the exclusionary rule. The District of Columbia Court of Appeals, in what it described as a nationwide case of first impression, held that such a statute could be enforced under circumstances “[w]here the resident, being within earshot, could have effectuated a peaceful entrance had the statute been complied with and where, being within eyeshot, may witness the violation as it takes place.” District of Columbia v. Mancouso, 778 A.2d 270, 274 (D.C.2001). No court in Florida has adopted this “earshot-eyeshot” rule, but at least one case has been resolved consistently with such a rule. See Ealey v. State, 714 So.2d 1162 (Fla. 1st DCA 1998) (finding a violation of the knock-and-announce rule when the defendant was detained by officers in his front yard).
Because the State has not challenged Mr. Spradley’s standing, we simply assume that Mr. Spradley had standing to challenge the violation of the statute in this case. We note, however, that this case involves invoking the exclusionary rule essentially to remedy the physical damage to Mr. Spradley’s two doors. To the extent that the rule’s purposes are to decrease the potential for violence during the execution of the warrant and to protect the privacy of the occupants of the home, these purposes do not apply directly to a suspect like Mr. Spradley, who is not within the confines of the home but instead detained outside. Even though these purposes may affect Mr. Spradley’s girlfriend and his young child, their remedy for this invasion is presumably provided by a civil action against the police, not the exclusion of evidence against Mr. Spradley. To the extent that the knock-and-announce rule is intended to prevent the destruction of private property, Mr. Spradley’s interests are implicated by the damage occurring to his two front doors.
IV. WAITING FIFTEEN SECONDS UNDER THESE CIRCUMSTANCES IS INSUFFICIENT FOR THE POLICE TO CONCLUDE THAT THEY HAVE BEEN REFUSED ADMITTANCE
Section 933.09 does not contain any express period that an officer must wait at *55 a door following his knock and announce before he is authorized to enter the home with force. Normally, the question is whether the officer has waited a sufficient period, under all of the circumstances, so that the officer can reasonably infer or conclude that he or she has been refused admittance by the occupants. See Richardson, 787 So.2d at 908; see generally Wayne R. LaFave, Search and Seizure: A Treatise On The Fourth Amendment § 4.8(e) (4th ed.2004). This court has noted that “[t]ime periods less than five seconds are rarely deemed adequate, and periods in excess of fifteen seconds are often adequate.” State v. Cassells, 835 So.2d 397, 399 n. 2 (Fla. 2d DCA 2003); see also United States v. Banks, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) (holding officers’ forcible entry after knocking and waiting fifteen to twenty seconds for response was reasonable).
We note that several facts in this case might seem important, but they are actually more of a distraction than a help during a proper analysis. First, Mr. Spradley was on the ground in the backyard under police guard at the time of the knock and announce. Second, his girlfriend was upstairs supervising a child a considerable distance from the front door and was unlikely to be able to reach the door in fifteen seconds. Finally, there was not one, but two locked doors between the occupants and the police, which would have further slowed the occupants’ ability to invite the police to enter within fifteen seconds. Although these facts may explain why no one reached the door in ten to fifteen seconds, they play little or no role in deciding whether the fifteen-second period was reasonable. None of these facts were known or reasonably ascertainable by the officer at the door making the decision to enter. The officer is required to make a reasonable judgment of whether he is being refused admittance based on the information that is actually available to him. Banks, 540 U.S. at 39, 124 S.Ct. 521 (“The facts known to the police are what count in judging a reasonable waiting time.”).
However, the officers did know that it was 9:41 p.m., a time when they could reasonably expect an occupant to be awake but late enough that the occupants might be preparing for bed. The home had at least two stories. The large team of officers descended upon the home and yard, yelling at people in the backyard, detaining people in the side yard, and knocking on the front door — all within the same fifteen-second time frame in which they expected the occupants to respond to their knock. Most important, the officers also detonated an explosive “distraction device” during these fifteen seconds. A “distraction device” is so named because it is designed and intended to distract and disorient occupants when officers make a forced entry into a home. It is not intended to be used as part of the knock-and-announce procedure but as an officer-safety measure that is used after a decision has been made to enter the home with force. Finally, the fifteen-second time frame included at least a few seconds when the officers were using the battering ram.
Under these circumstances, a reasonable, law-abiding person might delay more than a few seconds to respond to the door- — -to orient themselves, to make certain that the explosive device posed no danger, and to determine that it was safe to invite the person knocking to enter. It seems particularly unreasonable to expect an occupant to open the door in the seconds within which it is being hit with a large object on the other side.
Each of these factors occurring individually may not have rendered the fifteen-second delay unreasonable, but in their *56 totality the actions of the officers during the fifteen-second delay succeeded in eliminating any chance that the occupants may have had to permit a peaceable entry. We are most influenced by the timing of the detonation of the distraction device. At the hearing on the motion to suppress, defense counsel argued, “I don’t see how the government could set off explosions and then wonder why there is a delay in answering the door.” We agree. By intentionally detonating the distraction device during the few seconds that the occupants had to go to the front door and open it, the police could not reasonably expect the occupants to accomplish that which was expected of them.
We reverse the judgment and sentence and remand with instructions to grant Mr. Spradley’s dispositive motion to suppress and to discharge him.
SALCINES and KELLY, JJ., Concur.

. The descriptions of the house by the officers vary, but we are aided by a surveillance video that was taken shortly before and immediately after the execution of the warrant. The execution of the warrant was not recorded.