NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JUAN FALCON, )
)
         Appellant, )
)
v. )   Case No. 2D15-4134
)
STATE OF FLORIDA, )
)
         Appellee. )
)

Opinion filed October 27, 2017.

Appeal from the Circuit Court for
Collier County; Lauren L. Brodie,
Judge.

Christopher H. Brown of Brown,
Suarez, Rios & Weinberg, P.A.,
Naples, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and C. Todd Chapman,
Assistant Attorney General, Tampa,
for Appellee.


ROTHSTEIN-YOUAKIM, Judge.

        Juan Falcon pleaded no contest to charges of maintaining a marijuana

"grow house" and possessing drug paraphernalia based on the seizure of twenty-six

marijuana plants from a shed in his back yard. As part of his plea, Falcon preserved his

right to appeal the trial court's denial of his dispositive motion to suppress evidence on

the grounds that (1) the deputies had violated Florida's "knock-and-announce" statute,

section 933.09, Florida Statutes (2013), and (2) the search warrant had issued on insufficient probable cause. We hold that Falcon's first ground is meritorious, decline to reach the second ground, and reverse.

## Background

In denying Falcon's suppression motion, the trial court made no explicit findings of fact. Consequently, we must construe the factual record in the light most favorable to the denial of the motion, see In re Doe, 932 So. 2d 278, 283-84 (Fla. 2d DCA 2005) (observing that "traditional appellate presumption of correctness . . . require[s] us to view the record in the light most favorable to sustaining the order under review"), which we do as follows:

After learning that Falcon was engaged in a marijuana-growing operation out of his residence and/or a shed in his back yard, the Collier County Sheriff's Office independently confirmed the presence of items consistent with a grow operation near and connected to the shed. Thus, at just past 6:45 a.m. on April 9, 2014, a SWAT unit of at least six heavily armed deputies appeared on the front doorstep of Falcon's residence to execute a search warrant.

Less than an hour earlier, the deputies had all been briefed on the fact that Falcon lived in the residence with his family, which included an adolescent son and a teenage daughter. Notwithstanding the nature of the suspected offense,[1] the deputies had no reason to believe that there were any weapons in the residence or that Falcon

---

[1] At the suppression hearing, one SWAT member testified that, in situations involving a suspected marijuana-growing operation: "We always have to assume that there are weapons in the house. We can't go on the mentality that there's no weapons because we don't know."

was armed and dangerous; his criminal history consisted of one arrest for driving under the influence. The deputies also had no reason to believe that Falcon knew that they were coming, that anyone inside the residence was at risk of harm, or that Falcon or his family might try to escape or destroy evidence.

Over a public address system, the deputies thrice announced "Sheriff's Department" and demanded that those inside the residence open the door. The deputies observed no activity inside the residence. Their demand unmet, the deputies breached the door with a battering ram and another tool and then set off two pyrotechnic "noise flash diversion devices" at the front and side of the residence.

Falcon and his family had been sleeping when the deputies had arrived on their doorstep, and Falcon and his daughter were walking toward the front door when it was forced open. Numerous deputies entered the residence and secured Falcon, his wife, and his daughter by zip-tying their hands behind their backs. Although Falcon's son was not zip-tied, the record establishes that the deputies' entry terrified him.

Approximately twenty seconds elapsed between the moment that the deputies began the knock-and-announce procedure and their breach of the front door. At the suppression hearing, one deputy "estimate[d]" that "more than fifteen seconds" had elapsed between the first knock-and-announce and the breach. Accordingly, we must assume that, after duly notifying Falcon and his family of their authority to enter, deputies waited more than fifteen seconds but less than twenty seconds before breaching their front door.

## Analysis

Falcon argues that the SWAT deputies violated the knock-and-announce statute when they forcibly breached the front door of his residence to execute the search warrant. That statute provides:

> The officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of the officer's authority and purpose he or she is refused admittance to said house or access to anything therein.

§ 933.09.

The policy underlying section 933.09 derives from the sentiment that "[t]here is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the law protects its entrance so rigidly." State v. Bamber, 630 So. 2d 1048, 1052 (Fla. 1994) (quoting Benefield v. State, 160 So. 2d 706, 709 (Fla. 1964)). Where officers knock, announce their authority and purpose, and then enter with such haste that the occupant does not have a reasonable opportunity to respond, the search violates section 933.09. Holloway v. State, 718 So. 2d 1281, 1282 (Fla. 2d DCA 1998). And absent certain exigencies, a violation of section 933.09 warrants suppression. See generally State v. Cable, 51 So. 3d 434, 444 (Fla. 2010) (reaffirming suppression as remedy for violation of parallel knock-and-announce provision of § 901.19(1)); see also Benefield, 160 So. 2d at 710 (identifying exigencies that justify unannounced intrusion that would otherwise violate section 933.09).

Significantly, however, section 933.09 does not provide how long "after due notice" the officer must wait before forcibly entering the residence, and case law provides

- 4 -

no bright-line rule, although "[t]his court has noted that '[t]ime periods less than five seconds are rarely deemed adequate, and periods in excess of fifteen seconds are often adequate.' " Spradley v. State, 933 So. 2d 51, 55 (Fla. 2d DCA 2006) (quoting State v. Cassells, 835 So. 2d 397, 399 n.2 (Fla. 2d DCA 2003)) (second alteration in original). "[T]he question is whether the officer has waited a sufficient period, under all of the circumstances, so that the officer can reasonably infer or conclude that he or she has been refused admittance by the occupants,"[2] id., and "the only answer found in our case law is that the occupant must have a 'reasonable opportunity' to respond," State v. Pruitt, 967 So. 2d 1021, 1023 (Fla. 2d DCA 2007) (quoting Richardson v. State, 787 So. 2d 906, 908 (Fla. 2d DCA 2001)). In determining whether the occupant has been afforded a reasonable opportunity, "some factors the courts have considered include the nature of the underlying offense, the time of day the warrant is executed, the size of the home, whether any activity or movement is observed within the home at the time of execution, and whether any exigencies exist." Mendez-Jorge v. State, 135 So. 3d 464, 467 (Fla. 5th DCA 2014).

Although failing to explicitly find how long the deputies had waited, the trial court concluded that it had been "reasonable." Upon our de novo review of the pertinent factors, however, see Daniels v. State, 208 So. 3d 1223, 1226 (Fla. 2d DCA 2017) (explaining that we review de novo trial court's conclusions of law in ruling on suppression motion), we conclude that the fifteen to twenty seconds that the deputies

---

[2]An officer with a valid warrant may, of course, forcibly enter a residence upon an affirmative refusal of entry. Nevertheless, "whether the ultimate refusal be express or implied, the statute and case law interpreting it require that some quantity of time, sufficient under the particular circumstances, be permitted for an occupant to respond." Richardson v. State, 787 So. 2d 906, 908 (Fla. 2d DCA 2001).

provided Falcon and his family was not reasonable. Apart from the bare nature of the offense, no factor supported the urgency with which the deputies executed the warrant, and the facts of this particular case undercut the assumptions that the deputies would normally draw even from that factor: even allowing a general assumption that a marijuana-grower will be armed and dangerous, the State stipulated at the suppression hearing that the SWAT deputies had had no reason to believe that there were weapons in the residence or that Falcon was armed and dangerous. To the contrary, the deputies knew that the residence was Falcon's family residence, which he shared with his wife and children, and that Falcon's criminal history consisted of one prior arrest for driving under the influence. See Randall v. State, 793 So. 2d 59, 60 (Fla. 2d DCA 2001) (holding ten seconds unreasonable when officers executed warrant between 6:00 and 7:00 a.m. and had no information that firearms might be present or that residents posed any threat).

Furthermore, in executing the warrant at 6:45 a.m., the deputies all but ensured that the entire family would be home and, as turned out to be the case, might still be asleep.[3] See Spradley, 933 So. 2d at 55 (holding fifteen seconds unreasonable because, among other things, at 9:41 p.m., the officers "could reasonably expect an occupant to be awake but [it was also] late enough that the occupants might be preparing for bed."); Richardson v. State, 787 So. 2d 906, 908 (Fla. 2d DCA 2001) (holding ten seconds unreasonable at approximately 5:30 a.m. because it was "at a time of day when it was reasonable that persons inside the house would be sleeping" (citing Griffin v. United States, 618 A.2d 114 (D.C. 1992) (holding thirty seconds unreasonable at 1:40

---

[3]The SWAT unit leader testified that the unit had executed the warrant at that time for the safety of the unit. When asked what had prevented the unit from waiting until, for example, noon, the unit leader replied, "daylight."

a.m.))).  None of the deputies observed any activity or movement inside the residence. Cf. Braham v. State, 724 So. 2d 592, 594 (Fla. 2d DCA 1998) (considering officers' ability to hear phone ringing inside trailer and someone moving around inside as factors rendering five- to ten-second delay reasonable).  And the deputies had no reason to believe that Falcon knew that they were coming, that anyone inside the residence was at risk of harm, or that Falcon or his family might try to escape or destroy evidence.  Cf. Benefield, 160 So. 2d at 710 (identifying exigencies justifying unannounced intrusion).

## Conclusion

Upon consideration of all of these factors, we hold that the deputies violated section 933.03 by failing to afford Falcon a reasonable opportunity to respond and that this violation warranted suppression.[4]  In so holding, we recognize that determining what is reasonable is not an exact science and that, in the wrong situation, waiting too long could have catastrophic results.  Nonetheless, maintaining the balance between the rightful force and authority of the State and the rights of its citizens can come down literally to a matter of seconds.  Precisely because there is so little margin for error either way, we urge law enforcement agencies to use SWAT tactics to execute search warrants sparingly and to take special care that their use does not simply become par for the course.

Reversed; remanded for discharge.

WALLACE and KHOUZAM, JJ., Concur.

---

[4]Because we conclude that suppression is warranted on this basis, we need not address Falcon's alternative challenge to the sufficiency of the probable cause supporting the warrant.