# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

————————————————————

CARLOS ALBERTO TORRES-CARMONA,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-1423

————————————————————

January 14, 2026

Appeal from the Circuit Court for Hillsborough County; Samantha L. Ward, Judge.

Ita M. Neymotin, Regional Counsel, Second District, and Joseph Thye Sexton, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, Fort Myers, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Natalia Reyna-Pimiento, Assistant Attorney General, Tampa, for Appellee.

SILBERMAN, Judge.

In a one-count indictment, the State charged Carlos Alberto Torres-Carmona and a codefendant, Jonathan Xavier Garcia-Perello, with the first-degree murder of Jose Irizarry-Agosto. Torres-Carmona was found guilty of manslaughter, a lesser included offense. He was sentenced to a fifteen-year prison term with credit for time served. In this appeal of his

judgment and sentence, he challenges the denial of his motion to suppress all evidence resulting from a search of his home, including two cell phones.

The trial court denied Torres-Carmona's motion to suppress in an unelaborated order. On appeal, he argues that the court's lack of findings of fact or conclusions of law deprives him of meaningful appellate review. He also argues that the affidavit for the search warrant did not contain sufficient evidence to support probable cause to search his residence. Based upon our review of the record, we conclude that neither argument has merit and affirm Torres-Carmona's judgment and sentence.

"[A] trial court's ruling on a motion to suppress comes to us clothed with a presumption of correctness and, as the reviewing court, we must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *Ferrell v. State*, 391 So. 3d 645, 648 (Fla. 2d DCA 2024) (quoting *Murray v. State*, 692 So. 2d 157, 159 (Fla. 1997)). We review the denial of a motion to suppress under a mixed standard. *See Weaver v. State*, 233 So. 3d 501, 503 (Fla. 2d DCA 2017). We review the court's application of the law to the facts of the case de novo, but we "must defer to the factual findings of the trial court that are supported by competent, substantial evidence." *Id.* (quoting *Bautista v. State*, 902 So. 2d 312, 314 (Fla. 2d DCA 2005)).

As to Torres-Carmona's challenge to the adequacy of the order denying his motion to suppress, the lack of explicit findings does not mandate automatic reversal. In reviewing the trial court's decision, "we must construe the factual record in the light most favorable to the denial of the motion." *Falcon v. State*, 230 So. 3d 168, 170 (Fla. 2d DCA 2017);

2

*see also State v. Keel*, 557 So. 2d 907, 907 (Fla. 1st DCA 1990) ("conclud[ing] that the trial court was not required by any rule or statute to set forth detailed findings of fact in the written order granting the motion to suppress"). As a result, the absence of factual findings and legal conclusions does not, in itself, support reversal. *See State v. Thomas*, 332 So. 2d 87, 88 (Fla. 1st DCA 1976) ("With the exception of certain orders which are required by law to contain recitations of findings or reasons, if there is sufficient evidence in the record to sustain the order of the trial court the judge will be presumed to have properly based his order on that evidence.").

Regarding the sufficiency of the affidavit to support probable cause, "a supporting affidavit for issuance of a search warrant 'must satisfy two elements: first, that a particular person has committed a crime—the commission element, and second, that evidence relevant to the probable criminality is likely located at the place to be searched—the nexus element.' " *Sanchez v. State*, 141 So. 3d 1281, 1284-85 (Fla. 2d DCA 2014) (quoting *Burnett v. State*, 848 So. 2d 1170, 1173 (Fla. 2d DCA 2003)).

> Probable cause is a practical, common-sense question. It is the probability of criminal activity, and not a prima facie showing of such activity, which is the standard of probable cause. The determination of probable cause involves factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*State v. Rodriguez Lopez*, 378 So. 3d 691, 697 (Fla. 2d DCA 2024) (quoting *Polk v. Williams*, 565 So. 2d 1387, 1390 (Fla. 5th DCA 1990)).

The reasons given by law enforcement in support of a warrant "must be sufficient to create a reasonable belief that a crime has been committed." *Schmitt v. State*, 590 So. 2d 404, 409 (Fla. 1991). If the warrant provides a substantial factual basis for the magistrate to

3

conclude that a search will uncover evidence of a crime, then the test for probable cause is met. *Id.* When reviewing a magistrate's decision as to whether probable cause existed to issue a search warrant, "[t]he trial court should afford 'great deference' to the magistrate's decision and should not review the magistrate's decision de novo." *Rodriguez Lopez*, 378 So. 3d at 697 (alteration in original) (quoting *State v. Exantus*, 59 So. 3d 359, 361 (Fla. 2d DCA 2011)).

Here, an officer with the Osceola County Sheriff's Office provided a lengthy, detailed affidavit in support of the search warrant. The affidavit described the information gathered through the investigative work performed by detectives and officers with the Tampa Police Department and the Osceola County Sheriff's Office. The victim was shot and killed in his car. No mobile phones were located on his person or in his car, although the victim's girlfriend informed a detective that the victim had two cell phones and provided him with phone numbers. The detective ran a cellular provider check for both of the victim's phone numbers and received cell tower and call detail records.

The affidavit further disclosed the details of the investigation, including information obtained from several individuals and cell phone records. A neighbor reported that a few days before the victim's murder, the victim's dogs had gotten loose from the victim's yard. The victim's cell phone records showed that the victim called a phone number ending in 2103 shortly after speaking with the neighbor. That phone number was called five times over the course of twenty-three minutes. Call detail records for that cell number provided subscriber information identifying Torres-Carmona and listed his address and two cell phones as being associated with the same phone number. Torres-Carmona's probation

4

officer confirmed Torres-Carmona's phone number and address were consistent with those records.

The detective learned that the phone associated with codefendant Garcia-Perello traveled in tandem with the victim's phone from Orlando to Tampa. The affidavit disclosed that there were multiple, frequent contacts by phone and text between the phones of Torres-Carmona and Garcia-Perello on the day of the murder, beginning nearly two hours before the murder was believed to have occurred and growing in intensity about the time when the victim was leaving the Orlando area. No further messaging was found between those two phones after the estimated time of the murder. Garcia-Perello's phone and the victim's phone also traveled together for a short while after police believe the homicide occurred, although the victim's phone eventually stopped connecting to cell phone towers. Garcia-Perello's cell phone data indicated that he traveled from the area of the murder to the area around the home of Torres-Camona, who was "believed to have been in communication with Jonathan Garcia-Perello leading up to the homicide of [the victim]." After remaining in that area for eleven minutes, Garcia-Perello's phone data indicated that he then traveled to eastern Orlando.

We conclude that the detailed information contained in the affidavit satisfies both the commission and nexus elements required for a finding of probable cause. *See Sanchez*, 141 So. 3d at 1284-85. Further, there were no indications in the affidavit that any of this information was unreliable, and the affidavit demonstrated a fair probability that evidence of the homicide would be found as a result of the search. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (noting that "the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the

5

'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place").

Nevertheless, even if an affidavit contains deficiencies, where "the existence of probable cause presents a close question on which reasonable minds could differ—or even that probable cause was in fact lacking—suppression would nonetheless be unwarranted under the good faith exception to the exclusionary rule." *Rodriguez Lopez*, 378 So. 3d at 698. This exception "exists where evidence has been seized in reasonable reliance on a warrant issued by a neutral and detached magistrate, even if the affidavit in support of the warrant is later found to have been lacking the requisite probable cause." *Id.* The exception is unavailable if

> (1) the issuing magistrate was misled by information included in the supporting affidavit "that the affiant knew was false or would have known was false" but for the affiant's "reckless disregard of the truth," or if material information was knowingly or recklessly omitted from the affidavit; (2) the "issuing magistrate wholly abandoned" his detached and neutral role; (3) the supporting affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

*Id.* at 699 (alteration in original) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).

Although we conclude that the affidavit is not deficient, even if it was deficient, the good faith exception would be applicable. Thus, the trial court did not err by denying Torres-Carmona's motion to suppress.

Affirmed.

SLEET and LABRIT, JJ., Concur.

6

———————————————

Opinion subject to revision prior to official publication.